# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD A. FINAMORE,**      **)** | |
|         Plaintiff**,**      **)** | |
|      **)** | |
| **v.**      **)** | |
|      **)** | Civil Action No.: 05-1047 |
| **CSX TRANSPORTATION, INC.,**      **)** | |
|      **)** | |
|      **)** | |
|         Defendant**.**      **)** | |

## MEMORANDUM ORDER

CONTI, District Judge

In this memorandum order, the court considers the motion for summary judgment (Doc. No. 28) filed by defendant CSX Transportation, Inc. ("CSX" or "defendant"). In its motion for summary judgment, defendant seeks to dispose of the sole claim of plaintiff Richard A. Finamore's ("Finamore" or "plaintiff"), that defendant violated section 10 of the Federal Employer's Liability Act ("FELA"), codified at 45 U.S.C. § 60, when it discharged plaintiff for engaging in behavior protected by section 60.

After considering the joint statement of material facts and the respective submissions of the parties, the court will grant defendant's motion for summary judgment for the reasons set forth herein.

## FACTUAL BACKGROUND

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

At the time of the incidents giving rise to the current dispute, plaintiff worked as a locomotive engineer with defendant. (Joint Concise Statement of Material Facts ("J.S.") ¶ 1).  He also served as a legislative representative for the Brotherhood of Locomotive Engineers and Trainmen (the "Union" or "BLET"), a labor organization that represents a number of CSX's employees. J.S. ¶¶ 2-3.  In his complaint, plaintiff described his union duties as being "charged with the responsibility of representing members of" the Union. Complaint ("Compl.") ¶ 4.  In his deposition, he further explained that, as a legislative representative, it was his duty to "[p]rotect the health and safety of the membership" and to conduct "investigatory processes on unsafe conditions" and "injured members." Doc. 39, Ex. A at 4.

On March 7, 2005, plaintiff arrived at defendant's New Castle, Pennsylvania facility to collect and deliver Union mail.  J.S. ¶ 8.  He was at the New Castle facility in his capacity as a BLET representative and was not working as a locomotive engineer for defendant on that day.  J.S. ¶ 8.

2

While plaintiff was at the New Castle facility, Vince Skibo ("Skibo"), an engineer employed by defendant, informed him that another employee, D.L. Lumley ("Lumley"), was injured while working for defendant that day. J.S. ¶ 10.  Plaintiff asked Skibo whether Lumley required medical attention. J.S. ¶ 11.  Skibo told plaintiff that he did not know whether Lumley required medical attention, but offered to take plaintiff to Lumley. J.S. ¶ 12.

Skibo took plaintiff to meet Lumley in a crew room at the New Castle facility. Lumley informed plaintiff that he had injured his arm while working at defendant's Willard, Ohio facility.  J.S. ¶ 18.  Plaintiff claims that he then asked Lumley some details about the injury, including where and how the injury happened, whether Lumley had reported the injury, and when Lumley began experiencing pain.  J.S. ¶ 19; Doc. 39, Ex. A at 11.  According to plaintiff, Lumley informed him that he had reported the injury over the radio while at the Willard yard and that he did not start feeling pain in his arm until after he left the Willard yard.  J.S. ¶ 20; Doc. 39, Ex. A at 11-12.  During this conversation, Lumley asked plaintiff to act as his union representative when he reported the injury to defendant.  J.S. ¶ 22.

Plaintiff then called the BLET's local chairman, Russ Holden, who instructed plaintiff to represent both Lumley and Skibo.  J.S ¶¶ 24-25.  Plaintiff then took Lumley and Skibo to Building B at the New Castle facility, where they encountered the trainmaster, Tony Lepore ("Lepore").  J.S. ¶¶ 26, 31; Doc. 39, Ex. A. at 23.  Plaintiff

3

informed Lepore that Lumley was injured and required medical treatment. J.S. ¶¶ 31;

Doc. 39, Ex. A at 24.  Lepore then invited plaintiff, Lumley, and Skibo to accompany him

to see the road foreman of engines, Tommy Palumbo ("Palumbo").  J.S. ¶¶ 31-32.

Inside Palumbo's office, Lepore informed Palumbo that Lumley was injured and

either Palumbo or Lepore provided Lumley with an accident report to complete.  J.S. ¶

37,39.  Plaintiff informed Lepore and Palumbo that he was acting as the union

representative for both Lumley and Skibo, though Lepore initially disputed this

allegation.  J.S. ¶ 32-38.   Plaintiff also complained that defendant was delaying medical

treatment to Lumley, as well as attempting to deny him union representation.  J.S. ¶ 40.

Plaintiff asked Lumley whether he wished to go to the hospital before completing

the accident report, but Lumley told plaintiff that he was able to fill out the accident

report before receiving medical attention.  J.S. ¶ 41-42.  As Lumley filled out the form, he

asked plaintiff what building he should list for where he reported to work and where he

should sign the form, but did not ask plaintiff any other questions about the report.  J.S. ¶

44-45.

While plaintiff, Lumley, Skibo, and Palumbo were in Palumbo's office, Lepore

left to call Mike Benham, manager of safety and operating rules compliance for CSX's

Great Lakes Division, via cellular telephone. J.S. ¶ 48-49.  A few minutes after Lepore

left the room, plaintiff also went out into the hall and told Lepore that they needed to get

4

Lumley to the hospital to receive medical treatment.  J.S. ¶ 50.  Lepore did not respond to

plaintiff and began to walk back towards Palumbo's office.   J.S. ¶ 51.

When he arrived at the door of Palumbo's office, Lepore told plaintiff to wait

outside.  J.S. ¶ 52.  Plaintiff refused, stating that, as Lumley's union representative, he

was allowed to be present.  J.S. ¶ 53.  Lepore told plaintiff that he was not permitted to

enter and, though plaintiff claims that he did not touch Lepore, Lepore told plaintiff, "get

your hands off me."  J.S. ¶ 54; Doc. 39, Ex. A at 39.  Plaintiff then said to Lepore, "Tony,

I'm not touching you, don't even go there."  J.S. ¶ 54; Doc. 39, Ex. A at 39.

At the time of this disagreement, a security officer employed by defendant was

walking by and stopped to ask whether anything was wrong.  J.S. ¶ 55.  Lepore and

plaintiff both told the officer that everything was okay.  J.S. ¶ 56; Doc. 39, Ex. A at 42.

Apparently without any further disagreement, Lepore and plaintiff then reentered

Palumbo's office.  J.S. ¶ 57.

When they entered Palumbo's office, Lepore began to ask Lumley further

questions. J.S. ¶ 58.  Lumley told Lepore that he had already included the information

Lepore was requesting on the accident report.  J.S. ¶ 60.  Lepore told Lumley that the

information was not on the accident report and Lumley again insisted that it was.  Doc.

39, Ex. A at 45.  Lepore informed Lumley that if he did not make another statement, he

would charge him with insubordination. J.S. ¶ 61; Doc. 39, Ex. A at 45.  Plaintiff objected

to the questioning and again interjected that Lumley needed to receive medical attention.

5

J.S. ¶ 59.  Plaintiff also said to Lepore, "[T]here's no insubordination, he's not being insubordinate.  What are you nuts[?]"  Doc. 39, Ex. A at 46. Lumley subsequently signed a declaration that stated that he included all of the information being requested of him in the accident report.  J.S. ¶ 63.

After Lumley submitted his declaration, plaintiff told Lepore and Palumbo that he was taking Lumley to Jameson Memorial Hospital.  J.S. ¶ 64.  Skibo, Palumbo, and LePore followed plaintiff and Lumley to the hospital.  J.S. ¶ 65-66.  At the hospital, plaintiff told a hospital representative that Lumley's alleged injury was covered by the FELA, rather than workers' compensation.  J.S. ¶ 67.

Lumley received an x-ray at the hospital.  J.S. ¶ 71.  Following the x-ray, plaintiff asked a nurse whether Lumley had any broken bones, what type of x-ray had been performed, whether Lumley's vital signs had been taken, and whether Lumley had been prescribed any medication. J.S. ¶ 72.  The nurse provided this information to plaintiff. J.S. ¶ 73.

After Lumley received his x-rays, the parties returned to the New Castle facility and went to Palumbo's office there.  J.S. ¶ 74.  In Palumbo's office, Palumbo and Lepore asked Lumley for some further information that they said they needed to complete a company report about the injury.  J.S. ¶ 75.  Plaintiff interrupted several times, stating that Lumley had already provided all of the information.  J.S. ¶ 76.  During this meeting, Lepore told plaintiff that he believed plaintiff "had an agenda."  Doc. 39, Ex. A at 60.

6

The second meeting in Palumbo's office ended after Lepore and Palumbo reviewed the company's procedures for reporting injuries with Lumley.  J.S. ¶ 77.  During both meetings, plaintiff's conversations with Lepore and Palumbo were "loud" and plaintiff "might have" advised Lumley to refuse to answer questions from Palumbo and Lepore.  J.S. ¶¶ 79-80.

After the meeting, Lumley, Skibo, and plaintiff went to lunch at a restaurant near the New Castle yard.  J.S. ¶ 83.  While at the restaurant on March 7, 2005, Finamore advised Lumley to notify CSX that he would not be able to work due to his claimed injury.  J.S. ¶ 84.  Finamore called Palumbo on Lumley's behalf and asked that Lumley be excused.  J.S. ¶ 85.  After Palumbo told plaintiff that Lumley should notify Lepore, Lumley then called Lepore and left a message on Lepore's voicemail informing Lepore that he could not work.  J.S. ¶¶ 86-87.

Plaintiff did not conduct any further investigation into Lumley's injury.  J.S. ¶ 88.  It is undisputed that plaintiff did not witness the incident at the Willard yard, that he did not go to the Willard yard to investigate the switch, and that he did not interview any witnesses to the accident.  J.S. ¶¶ 89-93.  Plaintiff did not prepare a written report of his findings about Lumley's injury and did not communicate any of the information he may have collected to defendant.  J.S. ¶¶ 97-98.  He did, however, call the Union's local chairman to discuss Lumley's case.  Doc. 39, Ex. A 73-74.  There is no evidence in the record about what information plaintiff may have communicated to the local chairman.

7

When asked during his deposition what information plaintiff provided about Lumley's injury, plaintiff responded, "That I was his union representative, okay? That I was here to investigate and develop facts pertaining to the injury.  That's the type of information."  Doc. 39, Ex. A at 95.  When asked if there was any other information, plaintiff responded, "The questions that–the examples that I gave as far as, you know what I was doing trying to get to the bottom of this injury. . . . [T]hat was it."  Doc. 39, Ex. A at 95.

On March 8, 2005, defendant pulled plaintiff from service and he was not allowed on defendant's property.  J.S. ¶ 100.  On March 11, 2005, defendant informed plaintiff by letter that it intended to conduct a formal investigation into whether plaintiff "interfered with matters under investigation through [his] threatening and confrontational behavior and the use of profane and vulgar language"[1] J.S. ¶ 105; Doc. 39, Ex. F.  The letter also alleged that plaintiff "conceal[ed] facts concerning matters under investigation,"[2] was quarrelsome, and was insubordinate for refusing to follow Lepore's and Palumbo's directives.  Id.

On April 13, 2005, a formal investigation convened, during which plaintiff was represented by the BLET local chairman.  J.S. ¶ 106-07.  During a multi-day formal

---

[1] It is not clear from the record whether these actions violated any specific provision of the collective bargaining agreement or written rule of the employer.

[2] It is not clear what facts defendant alleges plaintiff possessed and failed to disclose to defendant.

hearing, plaintiff had the opportunity to call and cross-examine witnesses, make objections, and present witnesses.  J.S. ¶ 102.  Plaintiff maintained that he was only acting in his capacity as a union representative on March 7, 2005 and not as an employee of defendant.  J.S. ¶ 110.  Based upon the evidence presented during the investigation, defendant chose to dismiss plaintiff from service on May 18, 2005.  J.S. ¶ 112; Doc. 39, Ex. H.  The Union subsequently appealed the dismissal and the appeal is subject to binding arbitration under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*  J.S. ¶ 115-16.  At the time of plaintiff's deposition on October 16, 2006, no final arbitration decision had been issued in his appeal, Doc. 39, Ex. A at 156-58, and this court has not received any submission indicating that a decision has been reached since that date.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine

the truth of the matter, but only to determine whether the evidence of record is such that a

reasonable jury could return a verdict for the nonmoving party.  Id. at 249.

## DISCUSSION

Defendant moves for summary judgment on plaintiff's sole claim that defendant

violated 45 U.S.C. § 60 when it discharged him for his actions on March 7, 2005.

Plaintiff contends that defendant discharged him solely because he engaged in an

"investigation" into Lumley's injury, conduct which he argues is protected by section 60.

Defendant claims that plaintiff never engaged in behavior protected by section 60 and that

it discharged him instead for interfering with its investigation of Lumley's accident,

insubordinate behavior, and withholding information.

### I.  Behavior protected by 45 U.S.C. § 60

Section 60 provides in relevant part:

> Any contract, rule, regulation, or device whatsoever, the purpose,
> intent, or effect of which shall be to prevent employees of any
> common carrier from furnishing voluntarily information to a person
> in interest as to the facts incident to the injury or death of any
> employee, shall be void, and . . . whoever discharges or . . . attempts
> to discipline any employee for furnishing voluntarily such
> information to a person in interest, shall, upon conviction thereof, be
> punished by a fine of not more than $1,000 or imprisoned for not
> more than one year, or . . . both. . . .

45 U.S.C. § 60.

10

The plain language of the statute, legislative history, and relevant caselaw support the conclusion plaintiff did not "furnish[] voluntarily information" to anyone about the "facts incident" to Lumley's injury and thus is not protected by section 60.  Further, as will be discussed below, defendant did not employ in plaintiff's case any rule, regulation, or device that had the purpose, intent, or effect of preventing employees from furnishing voluntary information about workplace injuries.

Plaintiff did not engage in conduct protected by section 60 because he did not communicate facts about Lumley's injury to a person in interest.  The plain language of the statute protects from discipline or discharge only those who possess and actually furnish information about the facts of another employee's injury.

There is nothing in the statute or the legislative history that suggests that an individual furnishes voluntarily information within the meaning of the statute where, if not for disciplinary action, they might have made some effort to investigate the circumstances that surrounded an injury.  To the contrary, the legislative history indicates that Congress did not mean for section 60 to be broadly read in the manner plaintiff argues.  The Senate report concerning section 60 explains that Congress intended section 60 to "permit those *who have information* concerning the facts and circumstances of a personal injury to give statements to the injured employee or his dependents, or to someone authorized to represent him or them."  S. REP. NO. 76-661 ("S. REP."), at 5 (1939)*(emphasis added)*.  The Senate report further explains that section 60 is narrow

11

enough to "protect[] the employer against abuses that might result from so-called ambulance chasing by limiting those to whom information may be given without restriction to the actual parties in interest or those who have been duly authorized to represent them." Id.  This language demonstrates that Congress did not intend for section 60 to protect every individual that is involved in investigating an employee's injury, only those that actually have information about an injury and subsequently communicate that information to a person in interest.

The United States Court of Appeals for the Third Circuit has not directly addressed the issues raised in this case.  Courts of appeals in other circuits, however, have been unwilling to extend section 60 beyond those persons that have actually communicated personal knowledge about the facts of an injury.  For example, courts have held that section 60 does not protect individuals who arrange meetings or otherwise aid other employees in filing FELA claims.  In Woodrum v. Southern Railway Co., 750 F.2d 876 (11th Cir. 1985), the court concluded that section 60 did not protect an employee who arranged a meeting between an injured employee and a lawyer for the purpose of helping the injured employee file a FELA claim. Id. at 878, 883.

Likewise, in Jones v. Norfolk Southern Railway Co., 57 F.3d 1066 (Table), 1995 WL 347240 (4th Cir. Jun. 9, 1995), the court concluded that an employee who helped to arrange a meeting between the injured employee's attorney and three potential witnesses was not entitled to section 60 protection.  The court held that the plaintiff was not entitled

12

to section 60 relief because he "was not personally familiar with any of the facts or

circumstances of [the injured employee's] accident" and "[h]e acted merely as a

messenger for" the injured employee. 1995 WL 347240 at *2.  The court also observed

that  "to the extent [plaintiff]'s actions as an intermediary can be characterized as the

'furnishing' of 'information,' the information he provided was not 'as to the facts incident

to the injury,'" because he did not witness it.  Id.   See also Reinhardt v. Benefit Trust

Life Ins. Co., 819 F.2d 494, 495 (4th Cir.1987) (holding that section 60 did not cover an

insurance agent who distributed pamphlets to railroad employees advising them of their

rights under FELA if they were injured on the job because, "[r]ather than furnishing facts

related to a specific accident, [plaintiff] . . . distributed information describing general

legal rights").

    Plaintiff has not cited any decision in which a court held that a plaintiff who had

not actually provided information about the circumstances surrounding an employee's

injury was entitled to section 60 relief.  Rather, in every decision cited by plaintiff where

a court granted section 60 relief, the plaintiff had actually provided information about the

facts of the injury to a person in interest.  For example, in Hendley v. Central of Georgia

Railroad Co., 609 F.2d 1146 (5th Cir. 1980), the court held that section 60 protected an

employee who helped an injured employee understand the physical layout of the railroad

yard where the injured employee's accident had occurred.  Id. at 1148, 1152.  Though he

did not witness the injured employee's accident, the plaintiff had worked for the railroad

company for twenty-five years and understood the layout of the railroad yard better than the injured employee.  Id. at 1148.  At the request of the injured employee, the plaintiff met the injured employee and the injured employee's attorney at the yard and explained the exact physical layout of the yard to the injured employee.  Id.  Thus, the plaintiff provided that employee with information about the "facts" surrounding his injury, by aiding the plaintiff in understanding the location of the injury.

Similarly, in Stark v. Burlington Northern, Inc., 538 F. Supp. 1061 (D. C. Colo. 1982), the court held that an individual was entitled to section 60 protection when he helped an investigator discover the identity of individuals who may have had information about another employee's accidental death.  In that case, an investigator for a law firm[3] approached the plaintiff and asked him whether he could identify certain individuals in a photograph taken at the accident scene.  Id. at 1062.  When the investigator first showed him the picture, the plaintiff said that he did not know who the individuals were, but offered to discover their identity.[4]  Id.  After speaking to a police officer and another

_____

[3]  The court in Stark did not explain whether the investigator was the representative of the deceased employee.  538 F. Supp. at 1062.  Thus, it is not clear whether the investigator was actually a "person in interest" under section 60, though the court seems to assume that he or she was.  Otherwise, it seems that this would be the sort of "ambulance chasing" that section 60 does not protect.  See S. Rep.

[4]  Both parties in Stark agreed that section 60 would protect the plaintiff if he had been able to identify the individuals in the photograph when the investigator first approached him.  538 F. Supp. at 1062.  The court, however, did not specifically address whether identifying individuals in a photograph is furnishing information about the "the facts incident to the injury or death of any employee."

railroad employee, the plaintiff returned to the investigator with the information he had obtained.  Id. at 1061.  In Stark, the plaintiff actually obtained information about the facts surrounding an employee's death, specifically the identity of individuals present at the accident scene, and then communicated these details to a representative of the deceased employee.

Unlike the plaintiffs in Hendley and Stark, plaintiff did not possess or share any information about the facts and circumstances surrounding Lumley's injury.  He did not witness Lumley's injury.  He never identified or interviewed any witnesses to Lumley's injury.  He did not  provide Lumley or any other interested party with any details about the scene of the accident.  Lumley filled out the accident report on his own and did not ask plaintiff any question about the circumstances or facts surrounding his injury.  Instead, like the plaintiffs in Woodrum and Jones, plaintiff merely aided an injured employee in the process of pursuing a FELA claim.

Plaintiff argues, however, that he "does possess factual information directly relevant to Lumley's FELA claim." Plaintiff's Br. at 13.  At no point, however, does plaintiff explain what information he possesses about the facts incident to Lumley's injury.  Plaintiff seems to argue that the fact that he was beginning to inquire about Lumley's injury is evidence that he does possess evidence about facts incident to the injury.  Section 60, however, does not protect employees who may uncover information at some point, but only those employees that actually possess it.

These are only two kinds of information plaintiff appears to have obtained during the course of his "investigation":  (1) the information Lumley told him about his injury when the two first met at the New Castle facility, and (2) the information he received from the nurse at the hospital about Lumley's physical condition.  Even though this kind of information could be considered information about facts incident to Lumley's injury, plaintiff did not communicate this information to anyone in interest.

Plaintiff argues that he "has provided information or will, in the future, provide information to 'other interested parties.'"  <u>Id.</u>  But, he does not explain who these interested parties are.  He has not alleged that he provided any information to Lumley, his family, or his legal representatives about the facts surrounding his injury.  <u>See</u> S. REP. at 5 ("The purpose of [section 60] . .  is to . . . permit those who have information concerning the facts and circumstances of a personal injury to give statements to the injured employee or his dependents, or to someone authorized to represent him or them.").  The undisputed facts of record show that plaintiff did not communicate information about the facts surrounding Lumley's injury to any person in interest and thus this court concludes that defendant did not violate section 60 when it discharged him.

## II.    Contract, rule, regulation or device which has the effect of preventing the voluntary furnishing of information regarding a work place injury

Section 60 only prohibits those contracts, rules, regulations, and devices that prevent individuals from reporting evidence about a workplace injury to persons in

16

interest or their representatives. The Senate report explains that Congress intended the provision to "prohibit the enforcement" of "rules which prohibit employees from giving information concerning an accident to anyone excepting certain specified company officials and claim agents." S. REP. at 5. The statute's protections do not extend to rules and regulations unrelated to the reporting of information, unless a defendant manufacturers a claim under an unrelated rule or regulation solely for the purpose of preventing an employee from furnishing information about the facts surrounding a FELA claim.

For example, in Woodrum, the court concluded that the defendant had not violated section 60 when it dismissed the plaintiff for "'conduct disloyal and unbecoming an employee'", which involved arranging a meeting between an attorney and potential FELA claimant and taking the injured employee to a hotel to meet with the attorney. 750 F.2d at 878. The court reasoned that even if the plaintiff had communicated some information to the injured employee that would fall under section 60, "the charges under which [plaintiff] was discharged do not." Id. at 883.

In Gonzalez v. Southern Pacific Transportation Co., 773 F.2d 637 (5th Cir. 1985) ("Gonzales II"), the court denied relief under section 60 where a plaintiff knowingly provided false information about another employee's FELA claim. In an earlier opinion in the same case, the court agreed with the employer that it "ha[d] not enforced a rule against or discharged an employee for furnishing information, but . . . instead acted to

17

enforce a rule that prohibits the filing of required reports that are false." Gonzalez v. s. Pac. Transp. Co, 755 F.2d 1179, 1185 ("Gonzales I"), withdrawn on other grounds by, 773 F.2d 637 (5th Cir. 1985). Gonzales recognized that "§ 60 does not mean that 'an employee may never be disciplined for his conduct in connection with an FELA case.'" Gonzalez II, 773 F.2d at 642 (quoting Hendley, 609 F.2d at 1153). See also, Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (noting, in a case concerning an employee who had reported his own injury, that section 60 would not apply where an employee had falsified an accident report).

In Jones, the court of appeals rejected the plaintiff's argument that the disciplinary proceeding initiated by the defendant against the plaintiff acted as a device that "effectively prevented employees from voluntarily furnishing information to a person in interest."  1995 WL 374240 at *3.  The court of appeals reasoned that because, as the district court had found, "'the investigative process had *not* had the effect of stifling the free flow of information relative to [the injured employee] and his case,'" it did not violate section 60.  Id. at *3 (emphasis in original).  Like in Jones, there is no evidence of record in this case that would show defendant's investigation of plaintiff's conduct had stifled the flow of information relating to Lumley or his case.

Courts have granted section 60 relief, however, in cases where a rule, regulation, or device had the effect of preventing an individual from providing information about the facts relating to a co-worker's injury.  In Hendley, the plaintiff had presented evidence

18

showing that the defendant had initiated disciplinary proceedings on false charges with the sole purpose of preventing employees from providing information in FELA actions. 609 F.2d at 1153.  The court held in favor of the plaintiff, reasoning that even subjecting an individual to an investigation may be "a device the 'effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest,'" id. at 1153, where a plaintiff shows that the purpose of that investigation "is to discipline an employee for furnishing information in an FELA case." Id. at 1152.  The court recognized that since section 60 "prohibits a railroad from disciplining or attempting to discipline an employee for furnishing information to an FELA plaintiff[,] . . . any disciplinary investigation held solely for the purpose of punishing an employee for such conduct is violative of this statute."  Id. at 1150-51.

Here, even if plaintiff had engaged in behavior protected by section 60, he still would not be entitled to relief under that section because defendant did not discharge him for providing information about the accident to anyone.  Rather, defendant's stated reasons for dismissing plaintiff are: (1) interfering with an investigation through "threatening and confrontational behavior and the use of profane and vulgar language," (2) concealing information from defendant relating to the investigation, (3) being quarrelsome, and (4) being insubordinate for failing to follow the orders of Lepore and Palumbo.  Ex. H.  Even viewing the evidence of record in the light most favorable to

plaintiff, his behavior could justifiably be considered insubordinate, i.e., attempting to stop Lepore and Palumbo from questioning Lumley.

Plaintiff also has not demonstrated that defendant employed any "contract, rule, regulation, or device" which had the "purpose, intent, or effect of" preventing employees from furnishing voluntarily information about another employee's personal injury. Defendant did not dismiss plaintiff under a rule or regulation that would be void under section 60; the reasons for his dismissal involved confrontational and insubordinate behavior. There were no contracts, rules, regulations or devices implicated in this case that section 60 voids. Further, the disciplinary proceedings that defendant initiated against plaintiff were not a device that had the purpose, intent, or effect of preventing employees from providing interested persons with information about the facts of an accident.

Like the plaintiff in <u>Gonzales</u>, plaintiff in the present case was not disciplined for the act of disclosing information, but for violating another company rule or policy. The bases for plaintiff's discharge were unrelated to the disclosure of information. The railroad in the present case dismissed plaintiff for, *inter alia*, being confrontational, refusing to follow the directions of his superiors, and withholding information. There is nothing in the record that shows that defendant's rules prohibiting insubordination and confrontational behavior have the purpose, intent, or effect of preventing employees from reporting facts incident to an injury, nor has plaintiff presented any evidence that

20

defendant initiated the investigation solely to prevent plaintiff from furnishing information.  Accordingly, plaintiff's claim fails on this basis.

## CONCLUSION

Plaintiff's actions in assisting Lumley in the process of pursuing a potential FELA claim may have been well-intentioned, but they are not subject to section 60 protection. Section 60 protects individuals who actually possess and then communicate information about the facts incident to another employee's injury, not individuals who may at some point obtain such information.  Moreover, there is nothing in the record to show that defendant's rules involved in plaintiff's discipline had the purpose, intent or effect of preventing employees from reporting facts incident to an injury and there are no facts in evidence showing that defendant initiated the investigation solely to prevent plaintiff from furnishing information.  Accordingly, defendant's motion for summary judgment will be granted.

**ORDER**

**AND NOW,** this 20TH day of March 2007, upon consideration of the evidence of record and the parties' arguments and supporting documents, **IT IS ORDERED** that the motion for summary judgment filed by defendant (Doc. No. 28) is **GRANTED**.

The clerk is directed to mark this case as closed.

By the court:


/s/ JOY FLOWERS CONTI

Joy Flowers Conti

United States District Judge


cc:    counsel of record

22